Kennedy, J.
{¶ 1} This court has the authority to grant motions for reconsideration filed under S.Ct.Prac.R. 18.02 in order to “correct decisions which, upon reflection, are deemed to have been made in error.” State ex rel. Huebner v. W. Jefferson Village Council, 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1995). In seeking *490 reconsideration of this court’s decision in State v. Aalim, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862 (“Aalim I”), the state argues that the court failed to consider Article IV, Section 4(B) of the Ohio Constitution, which grants the General Assembly exclusive authority to define the jurisdiction of the courts of common pleas. We agree.
{¶ 2} Article IV, Section 4(B) of the Ohio Constitution grants exclusive authority to the General Assembly to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas. State v. Wilson, 73 Ohio St.3d 40, 42, 652 N.E.2d 196 (1995). The General Assembly exercised that authority when it vested in the juvenile courts “exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult.” In re M.P., 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 11, citing R.C. 2151.23(A). However, as part of Ohio’s response to rising juvenile crime, in 1996, the General Assembly enacted former R.C. 2151.26, now R.C. 2152.12,[1] State v. Hanning, 89 Ohio St.3d 86, 89, 728 N.E.2d 1059 (2000), citing Am.Sub.H.B. No. 1, 146 Ohio Laws, Part I, 1, 18, creating “a narrow exception to the general rule that juvenile courts have exclusive subject matter jurisdiction over any case involving a child,” Wilson at 43. Under R.C. 2152.12, a juvenile who has committed a qualifying offense and who meets certain age requirements is automatically removed from the jurisdiction of the juvenile division and transferred to adult court.
{¶ 3} This court’s ruling in Aalim I declared that the Ohio Constitution requires that a juvenile who is subject to mandatory bindover receive an amenability hearing. Aalim I at ¶ 25. Implicit in Aalim I is the conclusion that a juvenile-division judge has discretion in deciding whether to transfer to adult court a juvenile in a case in which the juvenile is 16 or 17 years old and there is probable cause to believe that the juvenile committed an offense outlined in R.C. 2152.10(A)(2)(b). Our decision in Aalim I therefore usurped the General Assembly’s exclusive constitutional authority to define the jurisdiction of the courts of common pleas by impermissibly allowing a juvenile-division judge discretion to veto the legislature’s grant of jurisdiction to the general division of a court of common pleas over this limited class of juvenile offenders. Therefore, we grant the state’s motion for reconsideration.
{¶ 4} Having granted reconsideration, we turn to the original questions presented and determine that the mandatory bindover of certain juveniles to adult court under R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) does not violate the Due *491 Course of Law Clause or the Equal Protection Clause of the Ohio Constitution and the analogous provisions of the Fourteenth Amendment to the United States Constitution.
I. CASE BACKGROUND
{¶ 5} On December 3, 2013, appellee, the state of Ohio, filed a complaint in the Juvenile Division of the Montgomery County Court of Common Pleas, alleging that appellant, Matthew I. Aalim, engaged in conduct that would be considered aggravated robbery in violation of R.C. 2911.01(A)(1) if committed by an adult. The complaint also contained a firearm specification. The state filed a motion to transfer Aalim, requesting that the juvenile court relinquish jurisdiction and transfer him to the general division of the common pleas court to be tried as an adult pursuant to Juv.R. 30, R.C. 2152.10(A)(2)(b), and R.C. 2152.12(A)(1)(b).
{¶ 6} On January 10, 2014, Aalim appeared before the Juvenile Division of the Montgomery County Court of Common Pleas for a hearing on whether the juvenile court should relinquish jurisdiction over Aalim’s case. At the hearing, Aalim was represented by counsel and his mother was also present. After, the hearing, the juvenile court issued an order and entry finding that Aalim was 16 years old at the time of the alleged offense and that there was probable cause to believe that he had committed the conduct alleged in the complaint, including the firearm specification. Based on these findings, the juvenile court recognized that it no longer had jurisdiction and transferred the case to the general division of the common pleas court as required under R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b). An indictment was issued charging Aalim with two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) with accompanying firearm specifications. The two counts of aggravated robbery charged in the indictment reflected the fact that there were two victims of the alleged conduct.
{¶ 7} Aalim filed a motion to dismiss the indictment and transfer his case back to juvenile court, arguing that mandatory bindover of juveniles pursuant to R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violates their rights to due process and equal protection as well as the prohibition against cruel and unusual punishments under both the United States and Ohio Constitutions. The trial court overruled the motion, and Aalim entered pleas of no contest to the two counts of aggravated robbery. The court accepted the pleas, dismissed the firearm specifications consistently with a plea agreement that the parties had reached, and sentenced Aalim to concurrent prison terms of four years on each count.
{¶ 8} The Second District Court of Appeals affirmed the trial court’s judgment, rejecting Aalim’s challenges to the mandatory-bindover statutes. Rejecting Aalim’s due-process argument, the court of appeals relied on a previous decision *492 to hold that the mandatory-bindover scheme of R.C. 2152.12 comports with fundamental concepts of due process. 2015-Ohio-892, 2015 WL 1123001, ¶ 7-9, citing State v. Brookshire, 2d Dist. Montgomery No. 25853, 2014-Ohio-1971, 2014 WL 1887703, ¶ 30. It also rejected Aalim’s equal-protection argument, concluding that the singling out of juveniles aged 16 and 17 charged with serious offenses is rationally related to the legitimate governmental purpose of protecting society and reducing violent crime by juveniles. Id. at ¶ 13-17, citing State v. Anderson, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, 2014 WL 4792558, ¶ 72-75. Aalim also raised a eruel-and-unusual-punishments challenge, which the Second District rejected. 2015-Ohio-892, 2015 WL 1123001, at ¶ 19-21. He has not included his cruel-and-unusual-punishments argument in this appeal.
{¶ 9} We accepted jurisdiction over two propositions of law, which ask us to hold that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate juveniles’ rights to due process and equal protection as guaranteed by the United States and Ohio Constitutions. See 143 Ohio St.3d 1498, 2015-Ohio-4468, 39 N.E.3d 1270. On December 22, 2016, we issued an opinion reversing the Second District’s judgment and declaring that the mandatory-bindover statutes were unconstitutional because they violated juveniles’ right to due process as guaranteed by Article I, Section 16 of the Ohio Constitution. Aalim I, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862. On January 3, 2017, the state moved for reconsideration. We grant the motion for reconsideration, which we address in this opinion. •
II. LEGAL ANALYSIS
{¶ 10} Aalim presents facial due-process and equal-protection challenges to R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b). His arguments regarding due process are (1) that fundamental fairness requires that every juvenile receive an opportunity to demonstrate a capacity to change, (2) that youth must always be considered as a mitigating—not aggravating—factor, (3) that the irrebuttable presumption of transfer contained in the statutes is fundamentally unfair, and (4) that juveniles have a substantive due-process right to have their youth and its attendant characteristics taken into account during a bindover proceeding.
{¶ 11} In support of his equal-protection claim, Aalim argues (1) that the mandatory-bindover statutes create classes of similarly situated juveniles who are treated differently based solely on their ages, (2) that a juvenile’s status as a juvenile is a suspect class for purposes of equal-protection analysis, and (3) that the age-based distinctions in the mandatory-bindover statutes are not rationally related to the purpose of juvenile-delinquency proceedings.
{¶ 12} The state counters that the mandatory-bindover statutes satisfy constitutional due-process requirements because they provide for all the required *493 procedural safeguards, such as the right to notice, the right to counsel, the right to confront and cross-examine witnesses, the right to introduce evidence on one’s own behalf, the privilege against self-incrimination, and protection from double jeopardy. Additionally, the state argues that substantive due process does not give Aalim the right to an amenability hearing. The state also argues that Aalim’s equal-protection challenge fails because the mandatory-bindover statutes do not infringe upon a fundamental right or affect a suspect class and are rationally related to a legitimate governmental interest.
{¶ 13} R.C. 2152.10(A) sets forth which juvenile cases are subject to mandatory bindover and provides:
(A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances:
(1) The child is charged with a category one offense and either of the following apply:
(a) The child was sixteen years of age or older at the time of the act charged.
(b) The child was fourteen or fifteen years of age at the time of the act charged and previously was adjudicated a delinquent child for committing an act that is a category one or category two offense and was committed to the legal custody of the department of youth services upon the basis of that adjudication.
(2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:
(a) The child previously was adjudicated a delinquent child for committing an act that is a category one or a category two offense and was committed to the legal custody of the department of youth services on the basis of that adjudication.
(b) The child is alleged to have had a firearm on or about the child’s person or under the child’s control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
Aggravated robbery is a category-two offense, R.C. 2152.02(BB)(1), and Aalim was 16 years old at the time the offense was committed. Because he was also *494 charged with a firearm specification, automatic transfer was required. R.C. 2152.10(A)(2)(b). A juvenile court must transfer a juvenile to adult court automatically under these circumstances if “there is probable cause to believe that the child committed the act charged.” R.C. 2152.12(A)(l)(b)(ii).
A. Due Process and Due Course of Law
{¶ 14} Aalim’s due-process argument fits into two categories. First, Aalim claims that juveniles have a substantive-due-process right to an individualized determination by a juvenile-division judge in an amenability hearing. Second, Aalim argues that the General Assembly’s decision to grant jurisdiction over a special class of juvenile offenders to the general division of the common pleas courts violates the “fundamental fairness” requirement of Ohio’s Due Course of Law Clause and the Fourteenth Amendment’s Due Process Clause.
{¶ 15} Since 1887, this court has equated the Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Adler v. Whitbeck, 44 Ohio St. 539, 569, 9 N.E. 672 (1887). See also State ex rel. Heller v. Miller, 61 Ohio St.2d 6, 8, 399 N.E.2d 66 (1980) (stating that Ohio courts may look to decisions of the United States Supreme Court to give meaning to Ohio’s Due Course of Law Clause). We reaffirmed this view as recently as last year. See State v. Hand, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 11 (“The ‘due course of law1 provision is the equivalent of the ‘due process of law1 provision in the Fourteenth Amendment to the United States Constitution”), citing Direct Plumbing Supply Co. v. Dayton, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941). Additionally, we have considered United States Supreme Court decisions “as giving the true meaning of the guaranties of the Ohio Bill of Rights.” Direct Plumbing Supply at 545.

1. Substantive Due Process

{¶ 16} The Supreme Court’s “established method of substantive-due-process analysis has two primary features.” Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). First, the court has “observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, ‘deeply rooted in this Nation’s history and tradition’ * * * and ‘implicit in the concept of ordered liberty,’ such that ‘neither liberty nor justice would exist if they were sacrificed.’ ” Id. at 720-721, quoting Moore v. E. Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), and Palko v. Connecticut, 302 U.S. 319, 326, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Second, the court has “required in substantive-due-process cases a ‘careful description’ of the asserted fundamental liberty interest.” Id. at 721, quoting Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). *495 The court has cautioned against using the Fourteenth Amendment to define new fundamental liberty interests without “concrete examples involving fundamental rights found to be deeply rooted in our legal tradition.” Id. at 722. The court has observed that “[t]his approach tends to rein in the subjective elements that are necessarily present in due-process judicial review.” Id.
{¶ 17} Aalim’s substantive-due-process argument can be disposed of in short order. Ohio’s Due Course of Law Clause was adopted in 1851, and the Fourteenth Amendment to the United States Constitution, which contains the federal Due Process Clause, was ratified in 1868. The first juvenile court in the United States was established in 1899 in Cook County, Illinois, and the first juvenile court in Ohio was the Cuyahoga County Juvenile Court, established in 1902. Supreme Court of Ohio, Desktop Guide for Juvenile Court Clerks 1-1 (2007). It was not until 1937 that the General Assembly established juvenile courts throughout the state, see Am.S.B. No. 268, 117 Ohio Laws 520, 522, and the amenability hearing was not added to the juvenile-court system until 1969, see Am.H.B. No. 320, 133 Ohio Laws, Part II, 2040, 2049. Because Ohio’s Due Course of Law Clause and the federal Due Process Clause both predate the creation of juvenile courts in Ohio and throughout the United States, these provisions cannot have created a substantive right to a specific juvenile-court proceeding. Therefore, an amenability hearing cannot be “deeply rooted in this Nation’s history and tradition” and “ ‘implicit in the concept of ordered liberty,’ ” Moore at 503, quoting Palko at 326.
{¶ 18} Justice O’Neill’s dissenting opinion contends that the United States Supreme Court has refused to rely solely on historical analysis when interpreting the Fourteenth Amendment’s substantive-due-process protection. Dissenting opinion, O’Neill, J., at ¶ 117, quoting Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 847-848, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (“ ‘Neither the Bill of Rights nor the specific practices of States at the time of the adoption of the Fourteenth Amendment marks the outer - limits of the substantive sphere of liberty which the Fourteenth Amendment protects’ ”). However, his dissent ignores the fact that since Casey, the court has been “ ‘reluctant to expand the concept of substantive due process,’ ” Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion), quoting Collins v. Harker Hts., 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), and has continually limited substantive-due-process protections to matters relating to “marriage, family, procreation, and the right to bodily integrity,” id. at 272, citing Casey at 847-849; see also Lawrence v. Texas, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (relying on Casey to conclude that the Fourteenth Amendment protects the right of two consenting adults of the same sex to engage in sexual conduct); Obergefell v. Hodges, — *496 U.S. -, 135 S.Ct. 2584, 2599, 192 L.Ed.2d 609 (2015) (the right to personal choice regarding marriage is inherent in the concept of individual autonomy protected by substantive due process under the Fourteenth Amendment). Compare Glucksberg, 521 U.S. at 727, 117 S.Ct. 2258, 138 L.Ed.2d 772 (the decision to seek physician-assisted suicide is not one of those personal activities and decisions that the Court has identified as “so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty that they are protected by the Fourteenth Amendment”).
{¶ 19} Importantly, the court has been far more skeptical of creating new rights based on substantive due process in criminal-procedure cases. In Dist. Attorney’s Office for Third Judicial Dist. v. Osborne, the court declined to recognize a substantive-due-process right to access DNA evidence for testing because establishing such a right “would force [the justices] to act as policymakers.” 557 U.S. 52, 73-74, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009). And in Flores, the court declined to recognize a substantive-due-process right asserted by undocumented juveniles awaiting deportation proceedings to private placement with responsible adults instead of detention in the custody of the Immigration and Nationalization Service (INS) because such a right was not “ ‘ “so rooted in the traditions and conscience of our people as to be ranked as fundamental.” ’ ” 507 U.S. at 303, 113 S.Ct. 1439, 123 L.Ed.2d 1, quoting United States v. Salerno, 481 U.S. 739, 751, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), quoting Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Comparing Flores and Osborne to the court’s substantive-due-process jurisprudence in privacy cases demonstrates that the court has confined its broad interpretation of substantive due process to cases in which government actions prohibited private conduct and infringed on personal autonomy.
{¶ 20} Finally, since Casey, the court has not categorically refused to rely exclusively on historical analysis when interpreting Fourteenth Amendment protections. See McDonald v. Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). In McDonald, the court determined that the Second Amendment right to keep and bear arms applies to the states under the Fourteenth Amendment’s Due Process Clause. Id. at 791. The court reached this conclusion using a Glucksberg historical analysis, McDonald at 767, concluding that “it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty,” id. at 778.
{¶ 21} The touchstones of the court’s analysis of substantive-due-process claims are whether the asserted right is grounded in history and tradition and whether the right protects against government intrusion into private conduct, Flores at *497 303; Lawrence, 539 U.S. at 578, 123 S.Ct. 2472, 156 L.Ed.2d 508, not, as Justice O’Neill’s dissent suggests, whether the right is a valid “expression of our social conscience,” dissenting opinion, O’Neill, J., at ¶ 116.

2. Fundamental Fairness

{¶ 22} Next, we address Aalim’s fundamental-fairness due-process argument. As the United States Supreme Court has observed, “[f]or all its consequence, ‘due process’ has never been, and perhaps can never be, precisely defined.” Lassiter v. Durham Cty. Dept. of Social Servs., 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Due process is a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur. Walters v. Natl. Assn. of Radiation Survivors, 473 U.S. 305, 320, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). “Applying the Due Process Clause is therefore an uncertain enterprise which must discover what ‘fundamental fairness’ consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.” Lassiter at 24-25. Accord In re D.S., 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 28 (what process satisfies Article I, Section 16 of the Ohio Constitution “depends on considerations of fundamental fairness in a particular situation”), citing In re C.S., 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 80, and In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 71.
{¶ 23} Due-process rights are applicable to juveniles through the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution. C.S. at ¶ 79, citing In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); C.P. at ¶ 70. This court has observed that in the context of a juvenile-court proceeding, the term “due process” “ ‘expresses the requirement of “fundamental fairness,” a requirement whose meaning can be as opaque as its importance is lofty.’ ” C.S. at ¶ 80, quoting Lassiter at 24. While we have not explicitly articulated what “fundamental fairness” means in a juvenile proceeding, “[a] court’s task is to ascertain what process is due in a given case, * * * while being true to the core concept of due process in a juvenile case—to ensure orderliness and fairness.” Id. at ¶ 81, citing McKeiver v. Pennsylvania, 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion).
{¶ 24} “The safeguard of a hearing is contained in the Revised Code and Rules of Juvenile Procedure, and it is grounded in due process and other constitutional protections.” State v. D.W., 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 20. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Supreme Court considered what is necessary to satisfy due process in the *498 bindover context. Initially, the court declined to extend all constitutional guarantees that would be applicable to adults. Id. at 556. Importantly, however, the court did determine that “constitutional principles relating to due process” are applicable to juveniles. Id. at 557. For purposes of bindover from juvenile court to adult court, the court held that due process is satisfied when a juvenile court issues a decision stating its reasons for the transfer after conducting a hearing at which the juvenile is represented by counsel. Id. at 554.
{¶ 25} As recently as three years ago, this court recognized: “[T]he Supreme Court of the United States has held that the bindover hearing is a ‘critically important proceeding’ and that the hearing ‘must measure up to the essentials of due process and fair treatment.’ ” In re D.M., 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 11, quoting Kent at 562. Moreover, we have quoted Kent for the rule that a transfer of a juvenile to adult court should not occur “ ‘without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons.’ ” D.W. at ¶ 20, quoting Kent at 554.
{¶ 26} Relying on the fundamental fairness required by procedural due process, the Chief Justice’s dissenting opinion argues that Kent requires that a juvenile-court judge make an “individualized assessment” based on a “ ‘full investigation’ [that] require[s] consideration of the ‘ “entire history of the child” ’ ” before transferring a juvenile to adult court. (Emphasis sic.) Dissenting opinion, O’Connor, C.J., at ¶ 99-100, quoting Kent at 559, quoting Watkins v. United States, 343 F.2d 278, 282 (D.C.Cir.1964). However, this portion of Kent is distinguishable from the facts at issue here. The General Assembly determines the jurisdiction of the juvenile court. Ohio Constitution, Article IV, Section 4(B). And the General Assembly has determined that in the limited circumstances described in R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b), juvenile offenders of a certain age charged with aggravated murder, murder, certain serious felonies committed after a prior delinquency adjudication, and certain serious felonies committed with a firearm shall be bound over to adult court. In Kent, the United States Supreme Court was not declaring that the requirement of the Juvenile Court Act for a “full investigation” before transfer was constitutionally required. Id. at 547. Instead, the court declined to use the Kent decision to broadly apply adult constitutional guarantees to children. Id. at 556. The court decided Kent based on the unique requirements of the applicable statute, the Juvenile Court Act, and it went “no further.” Id. Moreover, the reliance by the Chief Justice’s dissent on United States Supreme Court precedents interpreting juvenile offenders’ Eighth Amendment protections is misplaced because those cases were decided based on the Eighth Amendment, not on the procedural protections *499 found in the Due Process Clause of the Fourteenth Amendment. See dissenting opinion, O’Connor, C.J., at ¶ 58.
{¶27} Here, Aalim’s mandatory bindover from the juvenile division to the general division of the common pleas court satisfied the requirements of “fundamental fairness” required by Ohio’s Due Course of Law Clause and the federal Due Process Clause. Aalim had a hearing before a juvenile-division judge to determine Aalim’s age at the time of the alleged offense and whether there was probable cause to believe that he had committed the conduct alleged in the complaint. At this hearing, Aalim was represented by counsel and he had a parent present. After the hearing, the juvenile court issued an entry explaining why it no longer had jurisdiction over Aalim. Only after this proceeding satisfying the fundamental fairness required by Ohio’s Due Course of Law Clause and the federal Due Process Clause was Aalim transferred from the juvenile division to the general division of the common pleas court. Aalim has failed to show that his bindover violated his due-process rights, let alone that the mandatory-bindover statutes facially violate the constitutional due-process guarantees.
B. Equal Protection
{¶ 28} Aalim raises two arguments in support of his claim that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate juveniles’ equal-protection rights. First, Aalim contends that juveniles are a suspect class and that therefore, treating some juveniles differently triggers strict scrutiny. Additionally, he argues that the age-based distinctions of the mandatory-bindover statutes are not rationally related to the purpose of juvenile proceedings.
{¶29} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, “No State shall * * * deny to any person within its jurisdiction the equal protection of the laws.” Ohio’s Equal Protection Clause, Article I, Section 2 of the Ohio Constitution, provides, “All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *.” These two equal-protection provisions are functionally equivalent and require the same analysis. Eppley v. Tri-Valley Local School Dist. Bd. of Edn., 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 11.
{¶ 30} “In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment * * *, [courts] apply different levels of scrutiny to different types of classifications.” Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). We use the same analytic approach in determining whether a statutory classification violates Article I, Section 2 of the Ohio Constitution. State v. Williams, 88 Ohio St.3d 513, 530, 728 N.E.2d 342 (2000).
*500 {¶ 31} The first step in an equal-protection analysis is to determine the proper standard of review. Arbino v. Johnson & Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 64. When legislation infringes upon a fundamental constitutional right or the rights of a suspect class, strict scrutiny applies. See Williams at 530. If neither a fundamental right nor a suspect class is involved, the rational-basis test is used. See, e.g., Menefee v. Queen City Metro, 49 Ohio St.3d 27, 29, 550 N.E.2d 181 (1990).
{¶ 32} In order for Aalim’s facial equal-protection challenge to the mandatory-bindover statutory scheme to qualify for strict-scrutiny review, Aalim must demonstrate that juveniles are a suspect class or that juveniles have a fundamental constitutional right to an amenability proceeding. See Williams at 530.
{¶ 33} A “suspect class” is defined as “one ‘saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.’ ” Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), quoting San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The United States Supreme Court has noted that “age is not a suspect classification under the Equal Protection Clause.” Gregory v. Ashcroft, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Accord State v. Fortson, 11th Dist. Portage No. 2011-P-0031, 2012-Ohio-3118, 2012 WL 2686056, ¶ 41 (“Ohio courts have consistently held that juveniles do not constitute a suspect class in the context of equal protection law”); In re Vaughn, 12th Dist. Butler No. CA89-11-162, 1990 WL 116936, *5 (Aug. 13, 1990) (“juveniles have never been treated as a suspect class and legislation aimed at juveniles has never been subjected to the test of strict scrutiny”). Under both Ohio and federal law, juveniles are not considered a suspect class, and we decline to define them as one now. And as discussed above with respect to substantive due process, juveniles do not have a fundamental right to an amenability hearing, because the right to such a hearing is not “deeply rooted in this Nation’s history and tradition” and “ ‘implicit in the concept of ordered liberty,’ ” Moore, 431 U.S. at 503, 97 S.Ct. 1932, 52 L.Ed.2d 531, quoting Palko, 302 U.S. at 325, 58 S.Ct. 149, 82 L.Ed. 288.
{¶ 34} Because the mandatory-bindover statutes do not involve a fundamental right or a suspect class, we review the statutes under the rational-basis test, which requires us to uphold the statutes if they are rationally related to a legitimate governmental purpose, see Arbino, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 66, citing Williams, 88 Ohio St.3d at 530, 728 N.E.2d 342. Under rational-basis review, we grant “substantial deference” to the General Assembly’s predictive judgment. Williams at 531.
*501 {¶ 35} Under rational-basis review, a decision by the state to treat individuals differently is invalidated only when it is “ ‘based solely on reasons totally unrelated to the pursuit of the State’s goals and only if no grounds can be conceived to justify’ ” it. Id., quoting Clements v. Fashing, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), and citing Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), and Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ., 87 Ohio St.3d 55, 58, 717 N.E.2d 286 (1999).
{¶ 36} This court has noted that
according to some statistics, between 1965 and 1990, juvenile arrests for violent crime quadrupled. Redding, Juveniles Transferred to Criminal Court: Legal Reform Proposals Based on Social Science Research (1997), 1997 Utah L.Rev. 709, 762. As the juvenile crime rate began to rise, the public demanded tougher treatment of juveniles, and policymakers around the nation rushed to legislate a cure. See, generally, Rossum, Holding Juveniles Accountable: Reforming America’s “Juvenile Injustice System (1995), 22 Pepperdine L.Rev. 907.
Hanning, 89 Ohio St.3d at 89, 728 N.E.2d 1059. The General Assembly enacted the mandatory-bindover procedure to provide special measures for extraordinary cases, involving older or violent offenders. Id. at 89-90. We recognized in Hanning that former R.C. 2151.26(B)(4)(b), the mandatory-bindover provision applicable to 16-year-olds who committed a category-two offense with a firearm, was “a narrow exception to the usual criteria for determining amenability in certain situations where an older child has been accused of an inherently dangerous offense.” Id. at 92. Prosecuting older juveniles who commit serious crimes in the general division of a common pleas court is rationally related to the legitimate state interest of fighting rising juvenile crime because it allows the most serious juvenile offenders to be prosecuted in the general division, where harsher punishments are available. This court has recognized that “harms suffered by victims are not dependent upon the age of the perpetrator.” C.S., 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 74.
{¶ 37} Moreover, there is an explicit mandate in Article IV, Section 4(B) of the Ohio Constitution for the General Assembly to define the jurisdiction of all divisions of the common pleas courts in this state, and this court is duty bound to follow the structure established by the people of Ohio in our state Constitution. Therefore, the General Assembly could rationally achieve the legitimate state interest of decreased juvenile crime by redefining the jurisdiction of the juvenile *502 divisions of the common pleas courts. The mandatory-bindover statutory scheme is rationally related to the legitimate governmental purpose of increased punishments for serious juvenile offenders, so it does not violate juveniles’ right to equal protection under Article I, Section 2 of the Ohio Constitution.
III. CONCLUSION
{¶ 38} Because this court failed in Aalim I, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862, to consider the General Assembly’s exclusive constitutional authority to define the jurisdiction of the courts of common pleas under Article IV, Section 4(B) of the Ohio Constitution, we grant the state’s motion for reconsideration pursuant to S.Ct.Prac.R. 18.02. Upon reconsideration, we hold that the mandatory bindover of certain juvenile offenders under R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) complies with due process and equal protection as guaranteed by the Ohio and United States Constitutions. We therefore vacate our decision in Aalim /, and we affirm the judgment of the court of appeals upholding the trial court’s denial of Aalim’s motion to dismiss his indictment.
Motion for reconsideration granted and judgment affirmed.
O’Donnell and French, JJ., concur.
DeWine, J., concurs, with an opinion joined by O’Donnell, J.
Fischer, J., concurs in part and dissents in part, with an opinion.
O’Connor, C.J., dissents, with an opinion joined by O’Neill, J.
O’Neill, J., dissents, with an opinion.

. In 2000, R.C. 2151.26 was amended and recodified as R.C. 2152.12. See Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447, 9549.