[Cite as *Lowe v. Smith*, 2024-Ohio-5902.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

DENNIS RAY LOWE,

Petitioner,

v.

SHELBIE SMITH, WARDEN,

Respondent.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0038

---

Writ of Habeas Corpus

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Dismissed.

---

Dennis Ray Lowe, *Pro se*, Petitioner and

*Atty. Dave Yost*, Ohio Attorney General, and *Atty. Katherine E. Mullin,* Senior Assistant Attorney General, Criminal Justice Section, for Respondent.


Dated:  December 18, 2024

**PER CURIAM.**

{¶1} Dennis Ray Lowe petitions this Court for a writ of habeas corpus, seeking his immediate release from the Belmont Correctional Institution, where he is serving a life sentence. As a self-represented inmate, Lowe names Shelbie Smith, warden of the facility, as the respondent. He asserts that his conviction is void ab initio, relying on the Rules of Superintendence for the Courts of Ohio and claiming that the judge who conducted his bench trial lacked jurisdiction due to an alleged failure in judicial assignment procedures. In response, the warden moves to dismiss or, alternatively, for summary judgment. Lowe opposes the motion.

{¶2} Lowe's conviction stems from his 2002 indictment for aggravated murder and attempted aggravated murder, charges arising from a shooting in Akron, Ohio, that left one person dead. The trial court docket reflects that Judge Mary F. Spicer was assigned to the case at arraignment. Judge Spicer initially presided over pretrial matters, including appointing counsel for Lowe, scheduling the trial, and ruling on Lowe's statutory speedy trial motion. However, when Lowe's case proceeded to trial on December 20, 2002, Judge Mary Cacioppo presided as "Visiting Judge Sitting on Assignment pursuant to Art. IV Sec. 6, Ohio Constitution for Judge Mary F. Spicer." In her December 27, 2002 entry (file-stamped January 8, 2003), Judge Cacioppo noted Lowe's December 16 written waiver of his right to a jury trial. Following the bench trial, she found Lowe guilty and imposed consecutive sentences of life imprisonment for aggravated murder, ten years for attempted aggravated murder, and three years for a gun specification. The docket shows that Judge Spicer then resumed presiding over the case, handling matters such as appointing appellate counsel and approving fee requests.

{¶3} On direct appeal, Lowe challenged only the sufficiency and weight of the evidence and the imposition of consecutive sentences. The Ninth District Court of Appeals affirmed his conviction and sentence in *State v. Lowe*, 2003-Ohio-6807 (9th Dist.).

{¶4} Following his unsuccessful direct appeal, Lowe began challenging the validity of Judge Cacioppo's assignment, citing the absence of documentation assigning her to the case. He wrote to the Ohio Supreme Court requesting such documentation.

The Court's Judicial Assignment Officer responded that while either the Chief Justice or an administrative judge could assign visiting judges, no record existed of the Chief Justice assigning Judge Cacioppo to Lowe's case: "I searched our assignment records and I cannot find any record of the Chief Justice assigning Judge Cacioppo this specific case." (Aug. 23, 2024 Petition for a Writ of Habeas Corpus; Complaint; Exhibit E.)

{¶5} Citing Superintendence Rule 36's requirements for judicial case assignment in multi-judge courts, Lowe mounted numerous collateral attacks on his conviction, framing this alleged omission as a jurisdictional defect that rendered his conviction void. That rule mandates random case assignment to judges, who then maintain primary responsibility for the case until its termination. Lowe specifically relied on former Sup.R. 36(B)(2) and Sup.R. 36(B)(1).[1] Sup.R. 36(B)(2) required that "each multi-judge general . . . division of the court of common pleas shall adopt the individual assignment system for the assignment of all cases to judges of the division." This assignment system provides that "upon the filing in or transfer to the court of a division of the court, a case immediately is assigned by lot to a judge of the division, who becomes primarily responsible for the determination of every issue and proceeding the case until its termination." Sup.R. 36(B)(1).

{¶6} Between 2006 and 2017, Lowe repeatedly argued that the lack of an assignment of Judge Cacioppo to his case voided his conviction, presenting his claim through various procedural vehicles: postconviction petitions, new trial motions, final appealable order motions, statutory speedy trial motions, arrest of judgment motions, clerical mistake motions, and nunc pro tunc motions. The Ninth District consistently rejected these claims, applying res judicata and binding precedent that distinguishes void judgments from voidable ones. *State v. Lowe*, 2011-Ohio-3355 (9th Dist.); *State v. Lowe*, 2014-Ohio-1817, ¶ 7 (9th Dist.); *State v. Lowe*, 2015-Ohio-2625, ¶ 6 (9th Dist.).

{¶7} Lowe reasserts his claim again in this petition for a writ of habeas corpus. He relies on former Sup.R. 36 and *State v. Keith*, 2002-Ohio-7250 (8th Dist.), a case in which the Eighth District Court of Appeals applied the rule to declare a judgment void. The warden's counsel has moved to dismiss under Civ.R. 12(B)(6), arguing that Lowe

---

[1] The January 1, 2018 amendment rewrote the entire rule, relocating these provisions to Sup.R. 36.011(A) and Sup.R. 36.01(B), respectively.

Case No. 24 BE 0038

had adequate alternative legal remedies to raise his claims and has not demonstrated that he is entitled to immediate release from confinement.

{¶8} Under Civ.R. 12(B)(6), we must presume all factual allegations in the petition are true and make all reasonable inferences in favor of the nonmoving party. *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994). A petition may only be dismissed when, viewed in this light, it appears beyond doubt that the relator can prove no set of facts that would entitle them to the relief requested. *Goudlock v. Voorhies*, 2008-Ohio-4787, ¶ 7.

{¶9} Lowe's argument does not raise a valid challenge to the trial court's subject-matter jurisdiction. Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case. *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11-12, 34. "It is a 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.'" *Id.* at ¶ 11, quoting *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 19. Rather, the focus is on whether the forum itself is competent to hear the controversy. *See* 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 4428, at 6 (3d Ed.2017) ("Jurisdictional analysis should be confined to the rules that actually allocate judicial authority among different courts").

{¶10} Article IV, Section 4(A) of the Ohio Constitution provides that "[t]here shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state," and Article IV, Section 4(B) establishes that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters . . . as may be provided by law." As the Ohio Supreme Court explained in *State v. Aalim*, "Article IV, Section 4(B) of the Ohio Constitution grants exclusive authority to the General Assembly to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas." 2017-Ohio-2956, ¶ 2.

{¶11} The General Assembly exercised that power in enacting R.C. 2931.03, which provides that "[t]he court of common pleas has original jurisdiction of all crimes and

offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." Accordingly, "[j]urisdiction over all crimes and offenses is vested in the court of common pleas, general division, unless such jurisdiction specifically and exclusively is vested in other divisions of the court of common pleas or in the lower courts." *State ex rel. McMinn v. Whitfield*, 27 Ohio St.3d 4, 5 (1986). Therefore, pursuant to R.C. 2931.03, "a common pleas court has subject-matter jurisdiction over felony cases." *Smith v. Sheldon*, 2019-Ohio-1677, ¶ 8.

**{¶12}** When a tribunal has jurisdiction over both the subject matter and the parties involved, its authority is complete—any subsequent decisions it makes are simply an exercise of the jurisdiction it has been granted. *Pratts*, 2004-Ohio-1980, at ¶ 12. And when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void. *Id.* at ¶ 12, 21. Generally, a voidable judgment may be set aside only if successfully challenged on direct appeal. *See State v. Payne*, 2007-Ohio-4642, ¶ 28.

**{¶13}** Here, Lowe is challenging the propriety of the appointment of the visiting judge who presided over his trial, not the subject-matter jurisdiction of the trial court itself. It is undisputed that Lowe was charged with and convicted of felony offenses in the Summit County Court of Common Pleas. By virtue of the Ohio Constitution and R.C. 2931.03, the trial court had jurisdiction over Lowe's criminal case.

**{¶14}** The principal authority Lowe relies upon in support of his claim that the trial court lacked jurisdiction over his criminal case is *State v. Keith*, 2002-Ohio-7250 (8th Dist.), where the Eighth District Court of Appeals deemed a judgment void due to deficiencies in a visiting judge's assignment under former Sup.R. 36. In *Keith*, the court concluded that the absence of a proper judicial assignment rendered the visiting judge's actions void, relying on former Sup.R. 36 which required case assignments to follow the individual assignment system. However, *Keith* represented an isolated judicial interpretation that has since been superseded by binding precedent from the Ohio Supreme Court, as well as by the Eighth District's own subsequent decisions.

**{¶15}** In *Keith*, the defendant had been convicted in the Cuyahoga County Court of Common Pleas for multiple counts of arson and one count of grand theft of a motor vehicle. The record reflected that Judge Daniel Gaul was assigned to the case at its

inception and presided over the 1995 trial and sentencing. While the defendant's direct appeal was still pending, the trial court journalized an entry indicating that Judge Joseph E. Cirigliano, a visiting judge, had been appointed to preside over the defendant's case as well as several other cases then pending against the defendant in the trial court. The trial court then issued a corrective entry stating that the case had already been heard and disposed of by Judge Daniel Gaul and, further, that the case should not have been assigned to Judge Joseph E. Cirigliano. The record contained no entry from the Ohio Supreme Court appointing Judge Cirigliano to this case.

{¶16} Subsequently, in 2002, the defendant filed a motion for leave to file a motion for new trial. The state opposed the motion by filing a motion to dismiss which was granted by Judge Cirigliano. The defendant appealed, arguing that Judge Cirigliano lacked authority to issue any decisions in the case due to the absence of proper assignment. The Eighth District agreed, concluding that without evidence of a valid assignment, Judge Cirigliano's actions were void. The court declared the resulting judgment invalid and emphasized that procedural compliance with Sup.R. 36 was essential to confer authority on visiting judges to act in specific cases. This reliance on procedural irregularities to render the judgment void reflected a strict interpretation of the assignment rules, elevating procedural errors to the level of jurisdictional defects.

{¶17} The *Keith* decision ultimately turned on the absence of documentation reflecting Judge Cirigliano's assignment, treating this omission as a fundamental jurisdictional flaw. However, the procedural posture in *Keith*—a timely direct appeal— allowed the court to address the issue directly without the constraints of doctrines like res judicata, which would apply in collateral attacks. This distinction underpins the limited context in which *Keith*'s holding could be applied, even before subsequent decisions narrowed or invalidated its reasoning.

{¶18} Subsequent to the Eighth District's decision in *Keith*, the Ohio Supreme Court in *In re J.J.*, 2006-Ohio-5484, paragraph one of the syllabus, unequivocally held that procedural irregularities in judicial assignments affect only the jurisdiction over the particular case, rendering the resulting judgment voidable rather than void. This distinction between subject-matter jurisdiction and jurisdiction over a specific case clarified that procedural errors in assignment do not divest the trial court of its

constitutional authority to adjudicate the matter. *In re J.J.* further emphasized that such irregularities must be timely raised through objection or on direct appeal; otherwise, they are barred by the doctrine of res judicata. *Id.* at ¶ 16. This holding effectively overruled the core principle relied upon in *Keith* that judicial assignment errors create a void judgment.

{¶19} The Eighth District's subsequent decision in *State v. Harris*, 2020-Ohio-5425 (8th Dist.), reflects that court's realignment with Ohio Supreme Court precedent and a departure from the reasoning in *Keith*. In *Harris*, the defendant challenged the validity of his conviction on the grounds that the judge lacked proper assignment, similarly relying on procedural requirements in Sup.R. 36. Unlike in *Keith*, however, the Eighth District in *Harris* explicitly adhered to the principles established in *In re J.J.*, 2006-Ohio-5484, holding that any procedural irregularities in judicial assignments rendered the resulting judgment voidable, not void.

{¶20} The court explained that even assuming the defendant's case had been improperly assigned to the judge who presided over his bench trial, such an improper assignment would only render the verdict voidable, not void. It further emphasized that the defendant's failure to object to the judge's assignment during the proceedings waived the issue for purposes of appellate review, citing *In re J.J.* at ¶ 16. This reasoning illustrates the Eighth District's recognition that procedural errors in judicial assignments do not deprive the court of jurisdiction but must be timely addressed to be preserved for review.

{¶21} The Eighth District's subsequent alignment with *In re J.J.* in *Harris* underscores the obsolescence of *Keith* as a controlling authority. By treating procedural irregularities in judicial assignments as issues that render judgments voidable, the Eighth District has acknowledged the need for consistency with Ohio Supreme Court precedent. This shift demonstrates the court's understanding that elevating such errors to jurisdictional defects is incompatible with established principles governing subject-matter jurisdiction and void judgments.

{¶22} Even setting aside the developments in the law following *Keith*, the circumstances of that case illustrate why its treatment of the judgment as void was unnecessary. The procedural error regarding the visiting judge's assignment was raised

in a timely direct appeal, a context in which such claims could have been addressed without invoking the void judgment doctrine. By contrast, Lowe failed to raise his claim at the earliest opportunity—his direct appeal. Instead, he repeatedly reasserted the argument in collateral proceedings, all of which were properly dismissed on res judicata grounds. Unlike *Keith*, Lowe's failure to challenge the alleged defect in a timely manner forecloses his current attempt to collaterally attack his conviction.

**{¶23}** For these reasons, the analysis and outcome in *Keith* have no application here. Lowe's continued reliance on an overruled legal framework fails to demonstrate that his conviction is void. Accordingly, the warden's motion to dismiss is granted and Lowe's complaint for a writ of habeas corpus is dismissed. Any and all unresolved motions and filings not specifically addressed herein are hereby dismissed as moot. Costs assessed to Lowe. Final order. The clerk of courts is hereby directed to serve upon all parties not in default notice of this judgment and its date of entry upon the journal. Civ.R. 58.

**JUDGE MARK A. HANNI**

**JUDGE CAROL ANN ROBB**

**JUDGE KATELYN DICKEY**