[Cite as *In re A.M.*, 2026-Ohio-658.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE A.M.                                                    :

A Minor Child                                             :                    No. 115441

[Appeal by State of Ohio]                     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 26, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-25-101429

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Brian Callahan, Assistant Prosecuting
Attorney, *for appellant*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellee*.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant, the State of Ohio, appeals the juvenile court's decision

denying the State's request for a mandatory bindover to adult court. After a careful

review of the record, we reverse the juvenile court's decision and remand the matter

with instructions for the juvenile court to transfer jurisdiction of A.M.'s case to the

general division of the Cuyahoga County Court of Common Pleas for criminal prosecution.

{¶ 2} On February 11, 2025, a complaint was filed in the juvenile court against A.M., who was 16 years old at the time of the alleged acts, which occurred during a robbery of IMG Jewelers in Lyndhurst, Ohio, on June 28, 2024. On June 9, 2025, the State filed a motion for an order to relinquish jurisdiction for purposes of criminal prosecution pursuant to R.C. 2152.10(B) and a notice of mandatory bindover, seeking a transfer of the case to the general division of the Cuyahoga County Court of Common Pleas for criminal prosecution. The juvenile court held a probable-cause hearing on August 7, 2025.

{¶ 3} A detective who responded to the robbery incident testified at the hearing, and evidence was received. Two videos were introduced that captured portions of the robbery occurring. The videos show two males wearing hoodies entering the jewelry store, one holding a gun and the other a hammer, and they proceed to break glass display cases open and take jewelry. The suspect with the gun used it in his right hand to break the glass and used his right hand to grab jewelry. The suspect with the hammer used it in his right hand to break the glass and mostly used his left hand to grab jewelry. It appears from the videos that the suspect seen with a gun pointed it at different individuals inside the store. Witnesses reported that a third suspect was at the door during the incident and that they heard someone say, "Ant, we gotta go, Ant, we gotta go," just before the suspects left.

{¶ 4} The detective testified that witnesses interviewed on scene reported that they saw multiple guns during the robbery. Four witnesses indicated in their written statements that they saw one person with a gun during the incident. One witness estimated the man with the gun to be about 5'11" to 6' tall. The gun was not recovered. Over $600,000 worth of jewelry was stolen. The suspects fled in a vehicle that was located with A.M.'s phone found inside. A photograph on the phone taken the day of the robbery depicted A.M. with a bandage wrapped around his right hand. Blood was found on boxes and broken glass in the display cases at the jewelry store. The DNA was a match to A.M. Other testimony was provided.

{¶ 5} The juvenile-court judge found "there is probable cause as charged" on all eight counts but determined that "this case is [going to] stay in Juvenile Court because I don't find it to be a mandatory transfer." The juvenile-court judge did not find probable cause that there were two guns involved, indicating, "[W]hat I saw and heard was one gun." The juvenile court further stated that although there was evidence that one firearm was used, it was not clear "who got cut when," "who did what," or "who was in actual possession of the firearm." As such, the court decided that "[this case] is staying here." The State objected to the juvenile court's ruling.

{¶ 6} In the juvenile court's journal entry issued on August 11, 2025, the juvenile court included its finding of probable cause on all eight counts, stating as follows:

> Upon the conclusion of all evidence presented relating to the matter herein and the arguments of counsel, the Court finds that the child was 16 years of age at the time of the conduct charged, venue, and that there

is probable cause to believe that the child committed an act that would be the crime of

**count 1**, Aggravated Robbery, in violation of Section 2911.01(A)(1) of the Revised Code and classified as a felony of the first degree with Firearm Specification 1 year - 2941.141(A) and Firearm Specification 3 year - 2941.145(A);

**count 2**, Robbery, in violation of Section 2911.02(A)(1) of the Revised Code and classified as a felony of the second degree with Firearm Specification 1 year - 2941.141(A) and Firearm Specification 3 year - 2941.145(A);

**count 3**, Robbery, in violation of Section 2911.02(A)(2) of the Revised Code and classified as a felony of the second degree with Firearm Specification 1 year - 2941.141(A) and Firearm Specification 3 year - 2941.145(A);

**count 4**, Robbery, in violation of Section 2911.02(A)(3) of the Revised Code and classified as a felony of the third degree with Firearm Specification 1 year - 2941.141(A) and Firearm Specification 3 year - 2941.145(A);

**count 5**, Aggravated Theft, in violation of Section 2913.02(A)(1) of the Revised Code and classified as a felony of the third degree with FURTHERMORE, the property or services stolen is valued at one hundred fifty thousand dollars or more and less than seven hundred fifty thousand dollars and Firearm Specification 1 year - 2941.141(A) and Firearm Specification 3 year - 2941.145(A);

**count 6**, Receiving Stolen Property, in violation of Section 2913.51(A) of the Revised Code and classified as a felony of the fourth degree with Firearm Specification 1 year - 2941.141(A);

**count 7**, Improperly Handling Firearms In A Motor Vehicle, in violation of Section 2923.16(B) of the Revised Code and classified as a felony of the fourth degree;

**count 8**, Vandalism, in violation of Section 2909.05(B)(1)(b) of the Revised Code and classified as a felony of the fifth degree with Firearm Specification 1 year - 2941.141(A) and Firearm Specification 3 year - 2941.145(A); if committed by an adult.

**{¶ 7}** The juvenile court then continued the matter for a full investigation into whether A.M. is amenable to juvenile rehabilitation, noted that the State had objected to the "no finding of a mandatory transfer," and continued the matter for

an amenability hearing.  The State timely appealed.  We limit our review to the arguments raised.

{¶ 8}  As an initial matter, the parties dispute whether there is a final, appealable order.  Both parties recognize that the Supreme Court of Ohio has held an order of a juvenile court denying a motion for a mandatory bindover in a delinquency proceeding is a final, appealable order under R.C. 2505.02(B)(4), from which the State may appeal as a matter of right.  *See In re A.J.S.*, 2008-Ohio-5307, ¶ 33.  Furthermore, a juvenile court has a statutory duty to transfer a case when the elements of the transfer statute are met.  *Id*. at ¶ 22.

{¶ 9}  In this case, although the juvenile court could have been more precise in the wording of its journal entry, the entry can be construed as a denial of the State's request for a mandatory bindover.  The record herein shows the State requested a mandatory bindover, the juvenile court held a probable-cause hearing, the court found probable cause that A.M. committed all of the acts charged, the juvenile-court judge determined that the case would remain in juvenile court because "I don't find it to be a mandatory transfer," the court noted in its journal entry the State's objection to the court's "no finding of a mandatory transfer," and the court continued the matter for an amenability hearing.  It is readily apparent to this court that the juvenile court denied the State's request for a mandatory bindover.  This is not a case where we are unable to ascertain the juvenile court's ruling or where the juvenile court neither granted nor denied the State's request for

a mandatory bindover.[1]  In accordance with *In re A.J.S.*, we find the juvenile court's denial of the State's request for a mandatory bindover amounts to a final appealable order and that the State may appeal as a matter of right.  *See also In re C.J.H.*, 2024-Ohio-1233, ¶ 8-11 (12th Dist.) (following *In re A.J.S.* in finding the denial of a request for a mandatory bindover was a final, appealable order, and also recognizing that "a juvenile court may not retain jurisdiction over a case subject to mandatory bindover").  Accordingly, we shall proceed to address the State's challenge to the juvenile court's decision.

{¶ 10} "Under R.C. 2152.12, a juvenile who has committed a qualifying offense and who meets certain age requirements is automatically removed from the jurisdiction of the juvenile division and transferred to adult court." *State v. Aalim*, 2017-Ohio-2956, ¶ 2.  "These transfers are referred to as 'mandatory bindovers' because if the statutory conditions are met, the judge must transfer jurisdiction." *In re A.J.S.* at ¶ 1, fn. 1.  Moreover, in these situations, "[m]andatory transfer removes discretion from judges in the transfer decision[.]" *State v. Hanning*, 89 Ohio St.3d 86, 90 (2000).

{¶ 11}  Relevant to this matter, A.M. was alleged to have committed acts that would be the offense of aggravated robbery if committed by an adult, in addition to other offenses, and he was also charged with firearm specifications.  Aggravated

---

[1] This case is readily distinguishable from *In re J.C.*, 2024-Ohio-1883 (8th Dist.) (juvenile court failed to adjudicate several of the acts charged and also failed to explicitly grant or deny a mandatory-transfer motion), and *In re S.C.M.*, 2009-Ohio-6778 (10th Dist.) (juvenile court neither granted nor denied the State's motions for either mandatory or discretionary bindover).

robbery is a category-two offense. *See* R.C. 2152.02(BB)(1). Pursuant to R.C. 2152.10(A)(2)(b), an alleged delinquent child is eligible for mandatory transfer and "the child's case shall be transferred" as provided in R.C. 2152.12 if "[t]he child is charged with a category two offense," "the child was sixteen years of age or older at the time of the commission of the act charged," and "[t]he child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged." "A juvenile court must transfer a juvenile to adult court automatically under these circumstances if 'there is probable cause to believe that the child committed the act charged.'" *Aalim* at ¶ 13, citing R.C. 2152.12(A)(1)(b)(ii); *see also* Juv.R. 30(A). "[A] juvenile court's probable-cause determination in a mandatory-bindover proceeding involves questions of both fact and law, and thus, we defer to the trial court's determinations regarding witness credibility, but we review de novo the legal conclusion whether the State presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged." *In re A.J.S.*, 2008-Ohio-5307, at ¶ 51.

{¶ 12} "Probable cause exists when the facts and circumstances are sufficient to provide a reasonable belief that the accused has committed a crime. The inquiry requires the judge to review all the circumstances and make a practical, common-sense decision as to whether probable cause is present." (Cleaned up.) *In re E.S.*, 2023-Ohio-4273, ¶ 22. As the Supreme Court of Ohio has explained:

> At the probable-cause stage of the proceedings, the state need not prove a juvenile's delinquency beyond a reasonable doubt; instead, the state's burden is to produce evidence that raises more than a mere suspicion of guilt. There is no additional burden on the state to disprove alternate theories of the case at a bindover proceeding. Nor is there an obligation on the state's part to marshal all of its evidence at the probable-cause phase.

(Cleaned up.) *Id.* at ¶ 23.

{¶ 13} Importantly, "the juvenile court is not permitted to exceed the limited scope of the bindover hearing or to assume the role of the ultimate fact-finder." (Cleaned up.) *Id.* at ¶ 24. The juvenile court "is tasked only with determining whether the state presented sufficient credible evidence of probable cause, and that determination is reviewed de novo." (Cleaned up.) *Id.*

{¶ 14} In this case, the juvenile court found probable cause that A.M. committed the acts set forth under all counts of the complaint; however, the juvenile court did not find probable cause that there were two guns involved, and the court also determined that it was not clear "who was in actual possession" of the gun shown, finding "either of those persons [in the videos] could have been cut." The juvenile court referenced *Hanning,* 89 Ohio St.3d 86, with regard to the need to show actual possession. In *Hanning*, the Supreme Court of Ohio stated that the concept of complicity could not be used to support the mandatory bindover of a juvenile based on an accomplice's use of a firearm to facilitate a category-two offense of aggravated robbery. *Id.* at 91-94.[2] However, in this case, the State does not rely

---

[2] The Supreme Court of Ohio has limited its holding in *Hanning*. *See Agee v. Russell*, 92 Ohio St.3d 540, 548 (2001).

on the concept of complicity; rather, the State argues that sufficient evidence was presented of probable cause that A.M. was in actual possession of a firearm and brandished that firearm in furtherance of the act charged, i.e., aggravated robbery.

{¶ 15} At this stage of the proceedings, the State was only required to present sufficient evidence to raise more than a mere suspicion and to provide a reasonable belief that A.M. committed the acts charged. A review of the record shows that at least one of the males who entered the jewelry store had a gun, and the detective testified that witnesses interviewed on scene said they saw multiple guns. Only portions of the robbery were captured on video. The individual depicted in the video entering the store with a gun started breaking glass with the gun in his right hand; he used his right hand to steal jewelry, and he pointed the gun at different individuals. Blood was discovered on broken glass and items in the display cases; the DNA was matched to A.M., and the picture found on A.M.'s phone showed his right hand was bandaged. Witnesses heard an individual say, "Ant, we gotta go, Ant we gotta go," which the State argued also was suggestive of A.M. being the person with the gun and in charge. Further, there was testimony and evidence showing that the individual with the hammer mostly used his left hand to grab jewelry. Though it may be plausible that A.M. was the individual holding the hammer and there was no other gun, the State was not required to disprove alternate theories of the case or to marshal all of its evidence at the probable-cause phase. The State presented direct and circumstantial evidence that raises more than a mere suspicion and provides a reasonable belief that A.M. was in possession of a firearm and brandished that

firearm in furtherance of the acts charged, which was sufficient to demonstrate probable cause.

{¶ 16} Upon our review, we conclude that the State presented sufficient evidence of probable cause to believe that A.M. committed the acts charged and that the trial court erred in denying the State's request for a mandatory bindover. Accordingly, we sustain the State's assignment of error, reverse the juvenile court's decision, and remand the case with instructions for the juvenile court to enter a finding of probable cause and, pursuant to R.C. 2152.12, order the case transferred to the General Division of the Cuyahoga County Common Pleas Court.

{¶ 17} Judgment reversed, and case remanded with instructions.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
DEENA R. CALABRESE, J., CONCUR