[Cite as *State v. Jones*, 2022-Ohio-1169.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                        :

                                          Nos. 110453 and 110454

    v.                                                        :

ANTHONY JONES,                                  :

    Defendant-Appellant.                      :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 7, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-639295-A and CR-19-639974-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Samantha Sohl, Assistant Prosecuting Attorney, *for appellee*.

Jeffrey Richardson, *for appellant*.

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Anthony Jones ("Jones") appeals the trial court's decision arguing that the juvenile court was estopped from subjecting Jones to a discretionary transfer pursuant to R.C. 2152.12 and that the discretionary

transfer statute violated his due process and equal protection rights. For the following reasons, we affirm the trial court's decision.

**Factual and Procedural History**

**I. Juvenile Court Cases**

{¶ 2} On July 31, 2018, in Cuyahoga J.C. No. DL-18-109469, the state of Ohio filed a six-count complaint in the Juvenile Division of the Cuyahoga County Common Pleas Court that alleged Jones engaged in offenses that, if committed by an adult, would constitute one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree; one count of grand theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree; two counts of attempted grand theft in violation of R.C. 2923.02 and 2913.02(A)(1), felonies of the fifth degree; one count of theft in violation of R.C. 2913.02, a felony of the fifth degree; and one count of theft in violation of R.C. 2913.02, a misdemeanor of the first degree.

{¶ 3} On September 12, 2018, in Cuyahoga J.C. No. DL-18-111267, the state of Ohio filed a 14-count complaint in the Juvenile Division of the Cuyahoga County Common Pleas Court that alleged Jones engaged in offenses that, if committed by an adult, would constitute five counts of receiving stolen property in violation of R.C. 2913.51(A), felonies of the fourth degree; three counts of burglary in violation of R.C. 2911.12(A)(1), felonies of the second degree; two counts of grand theft in violation of R.C. 2913.02(A)(1), felonies of the fourth degree; one count of theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree; one count of receiving stolen property in violation of R.C. 2913.51(A), a misdemeanor of the first degree; one

count of failure to comply in violation of R.C. 2921.331(B), a felony of the third degree; and one count of failure to comply in violation of R.C. 2921.331(B), a felony of the fourth degree.

{¶ 4} Jones was 17 years old when he allegedly committed the offenses detailed in Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267. On September 18, 2018, the state of Ohio filed a motion to transfer jurisdiction of the cases to the General Division of the Cuyahoga County Common Pleas Court.[1] On February 14, 2019, the juvenile court found probable cause for all the charges brought against Jones. On April 4, 2019, the juvenile court conducted an amenability hearing and found Jones was not amenable to care or rehabilitation within the juvenile system. Pursuant to R.C. 2152.12(B), the discretionary transfer statute, the juvenile court transferred both cases to the General Division of the Cuyahoga County Common Pleas Court for further proceedings.

{¶ 5} Following the amenability hearing on April 4, 2019, the juvenile court arraigned Jones on Cuyahoga J.C. No. DL-19-104009. The state charged and Jones admitted to offenses that, if committed by an adult, would constitute one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree, and two counts of receiving stolen property in violation of R.C. 2913.51(A), felonies of the fourth degree. The juvenile court retained jurisdiction over this case; adjudicated Jones delinquent on all three counts; set the matter for disposition at a later date;

---

[1] The General Division of the Cuyahoga County Common Pleas Court is also referenced as adult court.

and remanded Jones to the juvenile detention center. On June 10, 2019, the juvenile court committed Jones to the legal care and custody of the Ohio Department of Youth Services ("ODYS") for a minimum of 12 months.

## II. Cuyahoga County Court of Common Pleas Cases

{¶ 6} Upon transfer to adult court, the trial court referenced Jones's Cuyahoga J.C. No. DL-18-109469 as Cuyahoga C.P. No. CR-19-639295-A. On May 3, 2019, a Cuyahoga County Grand Jury indicted Jones on six counts in Cuyahoga C.P. No. CR-19-639295-A, including one count of burglary in violation of R.C. 2911.12(A)(2); one count of grand theft in violation of R.C. 2913.02(A)(1); two counts of attempted grand theft in violation of R.C. 2923.02 and 2913.02(A)(1); and two counts of theft in violation of R.C. 2913.02(A)(1).

{¶ 7} On May 17, 2019, Jones was declared indigent and pleaded not guilty to the indictment in Cuyahoga C.P. No. CR-19-639295-A. The court set bond upon the condition that Jones maintained no contact with the victim.

{¶ 8} Upon transfer to adult court, the court referenced Jones's Cuyahoga J.C. No. DL-18-111267 as Cuyahoga C.P. No. CR-19-639974-A. On May 24, 2019, a Cuyahoga County Grand Jury indicted Jones on 13 counts in Cuyahoga C.P. No. CR-19-639974-A, including three counts of burglary in violation of R.C. 2911.12(A)(1); two counts of grand theft in violation of R.C. 2913.02(A)(1); one count of theft in violation of R.C. 2913.02(A)(1); six counts of receiving stolen property in violation of R.C. 2913.51(A); and one count of failure to comply in violation of R.C. 2921.331(B).

{¶ 9} On June 11, 2019, Jones was declared indigent and pleaded not guilty to the indictment in Cuyahoga C.P. No. CR-19-639974-A. Bond was set with the requirement that Jones have no contact with the victims.

{¶ 10} On November 22, 2020, in Cuyahoga C.P. Nos. CR-19-639295-A and CR-19-639974-A, Jones filed motions to dismiss. Jones also filed supplemental motions to dismiss on February 25, 2021. On March 9, 2021, following a hearing on the motions, the trial court denied Jones's motions to dismiss.

{¶ 11} On March 9, 2021, in Cuyahoga C.P. No. CR-19-639295-A, Jones withdrew his former pleas of not guilty and entered a plea of no contest to all six counts. The court advised Jones of his constitutional rights and penalties and, upon the evidence offered, found Jones guilty of one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree; one count of grand theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree; two counts of attempted grand theft in violation of R.C. 2923.02 and 2913.02(A)(1), felonies of the fifth degree; one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree; and one count of theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. The court ordered Jones to pay restitution in an amount to be determined. The trial court referred Jones for a presentence investigation and report.

{¶ 12} On the same date, in Cuyahoga C.P. No. CR-19-639974-A, Jones withdrew his former pleas of not guilty and entered a plea of no contest to all 13 counts. The court advised Jones of his constitutional rights and penalties and, upon the evidence offered, found Jones guilty of three counts of burglary in violation of

R.C. 2911.12(A)(1), felonies of the second degree; two counts of grand theft in violation of R.C. 2913.02(A)(1), felonies of the fourth degree; one count of theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree; five counts of receiving stolen property in violation of R.C. 2913.51(A), felonies of the fourth degree; one count of receiving stolen property in violation of R.C. 2913.51(A), a misdemeanor of the first degree; and one count of failure to comply in violation of R.C. 2921.331(B), a felony of the third degree. The court ordered Jones to pay restitution in an amount to be determined. The trial court referred Jones for a presentence investigation and report.

{¶ 13} On March 30, 2021, in Cuyahoga C.P. No. CR-19-639295-A, the trial court sentenced Jones to seven years on the burglary count; 18 months on the grand theft count; and 11 months each on the attempted grand theft counts and the theft count charged as a felony of the fifth degree. On the misdemeanor theft count, the court imposed a fine. The trial court ordered all jail sentences to run concurrent with each other and concurrent with the sentence imposed in Cuyahoga C.P. No. CR-19-639974. The trial court ordered three years' discretionary postrelease control. The trial court ordered Jones to pay restitution in the amount of $1,000 to the victim and a court fine in the amount of $250 per count, for an aggregate fine of $1,500.

{¶ 14} On the same date, in Cuyahoga C.P. No. CR-19-639974-A, the trial court sentenced Jones to seven years on each of the burglary charges; 17 months on each of the grand theft charges; 17 months on each of the receiving stolen property charges; and nine months on the failure to comply charge. The trial court did not

impose a prison term on the theft and misdemeanor receiving stolen property charges. All sentences were to run concurrent with each other, except the failure to comply charge that was to run consecutive to the other sentences. The trial court ordered Jones to pay restitution to the victims in an aggregate amount of $2,001.20 plus court fines in the aggregate amount of $3,250. The trial court also imposed three years' mandatory postrelease control. The trial court ordered the sentence to run concurrent with the sentence imposed in Cuyahoga C.P. No. CR-19-639295-A.

{¶ 15} On April 26, 2021, Jones filed timely notices of appeal in Cuyahoga C.P. Nos. CR-19-639295-A and CR-19-639974-A. On June 24, 2021, this court sua sponte consolidated Jones's two appeals for briefing, hearing, and disposition since the appeals stemmed from Jones entering guilty pleas in two separate cases on the same day and the court's imposition of sentences in those cases to be served concurrently.

{¶ 16} Jones's consolidated appeal is now before this court, presenting one assignment of error for our review.

**Legal Analysis**

{¶ 17} Jones argues that the discretionary transfer of a juvenile as detailed in R.C. 2152.10, 2152.12, and 2152.121 violates the due process and equal protection clauses of the United States and Ohio Constitutions because "juveniles charged with offenses subject to mandatory bindover can have their cases ultimately disposed of in Juvenile Court after transfer to adult court, while juveniles subject to discretionary bindover have no mechanism to return to juvenile court for

disposition once transferred to adult court." Jones also argues that the juvenile court was estopped from subjecting Jones to a bindover to adult court because the juvenile court, subsequent to the bindover, retained jurisdiction over Cuyahoga J.C. No. DL-19-104009 and accepted Jones's admission in that case.

## I. Discretionary and Mandatory Transfers

{¶ 18} To better address Jones's arguments, we will first explain mandatory and discretionary transfers within the juvenile court system.

{¶ 19} "Juvenile courts possess exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult." *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 11; R.C. 2151.23(A). Pursuant to R.C. 2152.12, under specified circumstances a juvenile may be subject to a mandatory or discretionary transfer, also referred to as bindover, from the juvenile court setting to adult court for criminal prosecution. Whether an alleged offender is subject to mandatory or discretionary transfer depends on such factors as the nature of the offense, the age of the child, and the child's prior criminal history. R.C. 2152.12(A) and (B); *Steele v. Harris*, 161 Ohio St.3d 407, 2020-Ohio-5480, 163 N.E.3d 565, ¶ 10.

{¶ 20} When an assistant prosecuting attorney requests a mandatory transfer, the juvenile court determines whether the child is eligible according to the child's age, the nature of the act, other statutory requirements, and whether there is probable cause to believe that the child committed the acts charged. *In re M.P.* at ¶ 11; R.C. 2152.10(A) and 2152.12(A). If a juvenile meets the statutory requirements,

the juvenile court lacks discretion over the transfer decision and the case must be subject to a mandatory transfer. *State v. Hanning*, 89 Ohio St.3d 86, 90, 728 N.E.2d 1059 (2000); R.C. 2152.12(A).

{¶ 21} "Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety." *Hanning* at 90; R.C. 2152.12(B). When considering discretionary transfer of a case, the juvenile court first determines the age of the child and the existence of probable cause to believe that the juvenile committed the acts charged. R.C. 2152.10(B) and 2152.12(B). Upon establishing the juvenile meets the requisite findings, the juvenile court conducts an amenability hearing.

{¶ 22} An amenability hearing "is a factual determination of whether the accused is amenable to treatment and rehabilitation within the juvenile penal system." *State v. Hopfer*, 112 Ohio App.3d 521, 540, 679 N.E.2d 321 (2d Dist.1996). To evaluate amenability, the juvenile court weighs the R.C. 2152.12(D) factors that support transfer with the R.C. 2152.12(E) factors that weigh against transfer.[2] The

---

[2] R.C. 2152.12, in pertinent part, addresses discretionary transfers and the factors the juvenile court considers at an amenability hearing:

(D) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:
(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

juvenile court also orders an investigation into the child's social history, education, family situation, and other relevant factors including a mental examination. R.C. 2152.12(C). Discretionary transfer occurs only after a juvenile court finds the juvenile is unamenable.

{¶ 23} Juveniles subject to a discretionary transfer do not have an opportunity to return to the juvenile court system once they have transferred to

---

(3) The child's relationship with the victim facilitated the act charged.
(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.
(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.
(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.
(8) The child is emotionally, physically, or psychologically mature enough for the transfer.
(9) There is not sufficient time to rehabilitate the child within the juvenile system.

(E) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:
(1) The victim induced or facilitated the act charged.
(2) The child acted under provocation in allegedly committing the act charged.
(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.
(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.
(5) The child previously has not been adjudicated a delinquent child.
(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.
(7) The child has a mental illness or intellectual disability.
(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

adult court. Additionally, juveniles boundover to adult court through mandatory transfer, but not eligible for reverse bindover, never experience a return to the juvenile system or an amenability hearing. In contrast, juveniles sent to adult court through mandatory transfer may return to the juvenile setting through a reverse bindover. R.C. 2152.121. Reverse bindover occurs following juveniles' convictions or pleas to a crime in adult court that would not have qualified the juveniles for mandatory or discretionary transfer. R.C. 2152.121(B)(2). Under those limited circumstances, the trial court imposes an adult sentence, stays the sentence, and returns the case to the juvenile court system through a reverse bindover. R.C. 2152.121. Upon reverse bindover, the juveniles may, at the state's request, undergo an amenability hearing. R.C. 2152.121. An amenability hearing is appropriate because these juveniles were not subjected to this process prior to their mandatory bindover to adult court.

{¶ 24} Jones argues that because the discretionary transfer statute lacked a mechanism to allow him to return to the juvenile court's jurisdiction following his bindover to adult court, the statute violated his due process and equal protection rights.

**II. Due Process**

{¶ 25} Jones presents alleged violations of substantive due process and the procedural due process fundamental fairness requirement. Jones argues juveniles have a substantive due process right to have their youth and its attendant characteristics considered at every stage of the proceeding, including resolution

after transfer to an adult court. Jones also contends a discretionary transfer violates the due process fundamental fairness requirement because: (1) every juvenile should receive an opportunity to demonstrate a capacity to change; (2) youth must always be considered as a mitigating rather than aggravating factor; and (3) inferring a presumption in favor of transfer is fundamentally unfair and violates the statutory language. In contrast, the state of Ohio relies on the Ohio Supreme Court's decision in *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, and argues that the discretionary transfer statute does not violate a juvenile's due process rights.

## A. Substantive Due Process

{¶ 26} A violation of substantive due process demonstrates a breach of "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition' * * * and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Id.* at ¶ 16, quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-721, 117 S.Ct. 2258, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997), quoting *Moore v. E. Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), and *Palko v. Connecticut*, 302 U.S. 319, 326, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Both Ohio's Due Course of Law Clause and the federal Due Process Clause predate the creation of juvenile courts in Ohio and throughout the United States. *Aalim* at ¶ 17.

{¶ 27} Jones argues a juvenile defendant sent to adult court through a discretionary transfer has a substantive due process right that requires his return to

the juvenile court's jurisdiction for further consideration of his youth and attendant circumstances. Jones premises his argument on the fact that juveniles transferred to adult court by mandatory transfer may be subject to a reverse bindover whereby the juvenile defendant returns to the juvenile court's jurisdiction. Jones argues the absence of a similar mechanism within the discretionary transfer process violates his substantive due process rights.

{¶ 28} Juvenile court proceedings do not represent fundamental rights and liberties that are the foundation of our justice system and, therefore, Ohio's Due Course of Law Clause and the federal Due Process Clause cannot have created a substantive right to a specific juvenile court proceeding. *Id.* at ¶ 17. There is no substantive right to an amenability hearing within the juvenile court setting since such hearing is neither "deeply rooted in this Nation's history and tradition" nor "implicit in the concept of ordered liberty." *Id.*, quoting *Moore* at 503, quoting *Palko* at 326. Likewise, there is no substantive right for a juvenile subject to a discretionary transfer to return to the juvenile court system for an additional amenability hearing. Absent such a right, no substantive due process violation arises from an alleged failure to return a juvenile defendant to the juvenile court's jurisdiction following his or her discretionary transfer to an adult court. Thus, Jones's claim of a substantive due process violation is without merit.

**B. Fundamental Fairness Requirement of Procedural Due Process**

{¶ 29} The Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution provide due

procedural process rights to juveniles. *Aalim* at ¶ 23, citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79, citing *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Procedural due process in juvenile court settings incorporates fundamental fairness. *Aalim* at ¶ 23, citing *In re C.S.* at ¶ 80. While the courts have not specifically defined fundamental fairness within juvenile proceedings, the Ohio Supreme Court stated, "'[A] court's task is to ascertain what process is due in a given case, * * * while being true to the core concept of due process in a juvenile case — to ensure orderliness and fairness.'" *Aalim* at ¶ 23, quoting *In re C.S.* at ¶ 81, citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion). Further, the United States Supreme Court found a court satisfies due process in a juvenile bindover "when a juvenile court issues a decision stating its reasons for the transfer after conducting a hearing at which the juvenile is represented by counsel." *Aalim* at ¶ 24, citing *Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

{¶ 30} In *Aalim,* the Ohio Supreme Court evaluated whether the juvenile mandatory bindover statute — rather than the discretionary process under which Jones was transferred to adult court — satisfied the requirements of fundamental fairness under the due process clauses. The juvenile court held a hearing to determine (1) the defendant's age at the time of the alleged offense and (2) whether probable cause supported the allegation that the defendant committed the alleged offense. At the hearing, counsel represented the juvenile and a parent was present. Following the hearing, the juvenile court generated an entry that indicated why the

juvenile court did not retain jurisdiction over the juvenile and the juvenile was subsequently transferred to adult court. The *Aalim* Court found that implementation of these procedures in a mandatory bindover process met the requirement of fundamental fairness as required by the Ohio Due Course of Law Clause and the federal Due Process Clause.

{¶ 31} Both the mandatory transfer statute addressed in *Aalim* and the discretionary transfer statute questioned in the instant case provide a mechanism whereby the juvenile court may transfer jurisdiction of a juvenile case to the adult court. Although *Aalim* involved a mandatory transfer rather than a discretionary transfer, the due process considerations are similar and, therefore, instructive. Applying *Aalim*'s holding here, we find that the juvenile court implemented the required statutory and due process procedures prior to granting Jones's discretionary bindover thereby ensuring orderliness and fairness. On February 4, 2019, the juvenile court held a probable cause and amenability hearing in Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267. Counsel represented Jones at those hearings. Following the amenability hearing, the juvenile court stated on the record its consideration of the applicable statutory factors and explained why it no longer retained jurisdiction over Jones. The juvenile court also issued judgment entries in both cases that discussed its reasoning for the transfers. Jones's transfer to adult court occurred after proceedings that satisfied the fundamental fairness requirements of Ohio's Due Course of Law Clause and the federal Due Process Clause.

{¶ 32} In support of his fundamental fairness requirement claim, Jones argues that the discretionary transfer statute is arbitrary and is applied inconsistently because the assistant prosecuting attorney selects those cases he or she wishes to pursue for discretionary transfer and the assistant prosecuting attorney may be inappropriately influenced in that determination. This court recognizes that the assistant prosecuting attorney represents to the juvenile court which cases should be considered for discretionary transfer. Yet simply because the assistant prosecuting attorney represents the cases to be considered for discretionary transfer does not indicate bias. And even if the assistant prosecuting attorney's actions were biased, which Jones has not shown in the instant case, the judge ultimately determines whether a juvenile is subject to a discretionary transfer. Because the judge is the final arbiter, this process does not violate Jones's fundamental fairness requirement.

{¶ 33} Jones also contends a juvenile's inability to return to the juvenile court's jurisdiction once he is subject to a discretionary transfer is fundamentally unfair. We find that after the juvenile court weighs the statutory factors and other relevant materials at the amenability hearing and determines that the juvenile is unamenable to the juvenile court system, there is no basis to return the juvenile defendants to the juvenile court setting. The reasoning behind a reverse bindover and a subsequent amenability hearing following select mandatory bindover cases does not apply to juveniles subject to discretionary transfer.

{¶ 34} Jones also argues that the timing of his amenability hearing in the discretionary transfer process violated his fundamental fairness due process rights. Jones argues that juveniles subject to a discretionary transfer do not speak freely at their amenability hearing and during the related assessment process, all of which occur prior to fact finding and a determination of culpability. Juveniles purportedly cannot candidly respond to evaluators and discuss their remorse, capacity for change, and responsiveness to rehabilitation services for fear that their comments will negatively impact the determination of culpability. According to Jones, this same concern does not apply to juveniles subjected to a mandatory transfer and who are subsequently returned to the juvenile court through a reverse bindover and then afforded an amenability hearing.

{¶ 35} When evaluating a discretionary transfer, the juvenile court weighs the statutory factors and other relevant documentation to determine a juvenile's amenability. The majority of the statutory factors do not require individual comment from the juvenile. In the instant case, the juvenile court considered the R.C. 2152.12(D) factors and made the following findings that were considered during the amenability hearing:

(1) The victims suffered physical, psychological, or serious economic harm.

(2) Jones allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(3) At the time of the act charged, Jones was awaiting a community control sanction or was on parole for a prior delinquent child adjudication or conviction.

(4) The results of any previous juvenile sanctions and programs indicated that rehabilitation of Jones would not occur in the juvenile system.

(5) Jones was emotionally, physically, or psychologically mature enough for the transfer.

(6) There was not sufficient time to rehabilitate Jones within the juvenile system.

The juvenile court found no R.C. 2152.12(E) statutory factors weighed against Jones's discretionary transfer. The juvenile court did not require any additional input from Jones to find his discretionary transfer was appropriate.

{¶ 36} In further support of the position that Jones's due process rights were not violated because he allegedly could not speak openly at the amenability hearing, we note that a juvenile need not undergo an amenability hearing but may choose to waive the hearing "provided (1) the juvenile, through counsel, expressly states on the record a waiver of the amenability hearing and (2) the juvenile court engages in a colloquy on the record with the juvenile to determine that the waiver was made knowingly, voluntarily, and intelligently." *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 47. We find unpersuasive Jones's claim that he could not openly communicate during the evaluation and amenability hearing. We also find unpersuasive the argument that Jones's silence during the amenability hearing negatively impacted his due process rights.

{¶ 37} Finally, Jones argues that discretionary transfers are racially and socially imbalanced. This assertion is not related to a clear legal argument, nor does

he indicate the assistant prosecuting attorney improperly considered race when recommending discretionary transfer for Jones. Therefore, this assertion is unpersuasive.

{¶ 38} For the foregoing reasons, we find Jones's fundamental fairness due process violation claim lacks merit.

### III. Equal Protection

{¶ 39} Jones contends R.C. 2152.10, 2152.12, and 2152.121 violate his equal protection rights as guaranteed under the United States and Ohio Constitutions because the statutory provisions are unreasonable, arbitrary, and not rationally related to the purposes of the juvenile justice system. Many of Jones's equal protection arguments mirror those presented in support of his alleged due process violations. Specifically, Jones argues that juveniles subject to mandatory bindover to adult court followed by reverse bindover to the juvenile system have a more meaningful opportunity for rehabilitation than juveniles subject to a discretionary transfer with no possibility to return to the juvenile system. Jones further argues that juveniles subject to an amenability hearing prior to discretionary transfers withhold information to protect themselves from self-incrimination that limits their ability to participate in the evaluation ordered by Juv.R. 30. Lastly, Jones argues that the discretionary transfer statute violates his equal protection rights because the assistant prosecuting attorney decides whether to seek a discretionary bindover transfer. The state of Ohio contends Jones's equal protection rights are not violated because juveniles subject to discretionary transfer are provided an amenability

hearing prior to transfer and the alleged equal protection violations do not satisfy the rational-basis test.

{¶ 40} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Ohio's Equal Protection Clause in Article I, Section 2 of the Ohio Constitution provide individuals with equal protection under the laws and apply the same analysis to determine whether a statutory classification violated the equal protection clauses. *Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 29-30. In evaluating an equal protection claim, a court must first determine the proper standard of review: strict scrutiny or rational-basis test. *Id*. at ¶ 31. Legislation directed at a suspect class or that infringes on a fundamental constitutional right is subject to a strict scrutiny test. *Id*. Juveniles are not considered a suspect class. *Id*. at ¶ 33. Further, as discussed above in Section A, Substantive Due Process, juveniles do not have a fundamental right to an amenability hearing or to be returned to the juvenile court system following bindover. *Id*. Absent a fundamental right or a suspect class, Jones's equal protection claim is reviewed under a rational-basis test.

{¶ 41} Pursuant to the rational-basis test, courts uphold statutes that are rationally related to a legitimate governmental purpose. *Id*. at ¶ 34. Substantial deference is given to the General Assembly and its predictive judgment. *State v. Williams*, 88 Ohio St.3d 513, 531, 728 N.E.2d 342 (2000). Further, "[t]he state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must [negate] every conceivable basis before an

equal protection challenge will be upheld." *Id*. A legislative decision to "treat individuals differently is invalidated only when it is "'based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify'" it." *Aalim* at ¶ 35, quoting *Williams* at 531, quoting *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), and citing *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), and *Am. Assn of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 58, 717 N.E.2d 286 (1999).

{¶ 42} The overriding question is whether the discretionary transfer statute is rationally related to a legitimate government purpose. The mechanics of discretionary and mandatory transfers differ, but the transfers share the same purpose or goal. The General Assembly adopted discretionary and mandatory transfers to address juvenile delinquent acts that could constitute felony offenses of violence had they been committed by an adult. *State v. Ramey*, 2d Dist. Montgomery No. 16442, 1998 Ohio App. LEXIS 2617, ¶ 8 (May 22, 1998).[3] The legitimate government objective behind both transfers is "to punish violent juvenile offenders more harshly by denying them the prospect of more lenient treatment in the juvenile system." *Id*. These objectives are balanced with the statutory goals and purposes of the juvenile courts: "[t]he overriding purposes for [juvenile] dispositions under [R.C. Chapter 2152] are to provide for the care, protection, and

---

[3] The court in *Ramey* applies an equal protection analysis to former R.C. 2151.26(B), which is now codified as R.C. 2152.12.

mental and physical development of children subject to [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A).

{¶ 43} Ohio courts, including the Ohio Supreme Court, have found that the mandatory transfer statute does not violate a juvenile's equal protection rights. *Ramey*; *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850, ¶ 45 (8th Dist.); *State v. Kelly*, 3d Dist. Union No. 14-98-26, 1998 Ohio App. LEXIS 5630 (Nov. 18, 1998); *State v. Collins*, 9th Dist. Lorain No. 97CA006845, 1998 Ohio App. LEXIS 2474 (June 3, 1998); *State v. Lee*, 11th Dist. Lake No. 97-L-091, 1998 Ohio App. LEXIS 4250 (Sept. 11, 1998); and *Aalim* (all courts found that the mandatory transfer provisions in former R.C. 2151.26(B), which is now codified as R.C. 2152.12 or 2152.12 do not violate a juvenile's constitutional rights to equal protection under the law). "Prosecuting older juveniles who commit serious crimes in the general division of a common pleas court is rationally related to the legitimate state interest of fighting rising juvenile crime because it allows the most serious juvenile offenders to be prosecuted in the general division, where harsher punishments are available." *Id.* at ¶ 36. Applying that same reasoning to the discretionary transfer statute, we find that the General Assembly's reason for the discretionary transfer statute is rationally related to the government's legitimate purpose. The rationale behind discretionary transfers is to protect society and lower violent juvenile crime. The government's legitimate purpose is to punish violent juveniles more harshly and thereby deny them access to more lenient treatment in the juvenile system. Thus,

we uphold the discretionary transfer statute that satisfies the rational-basis test and find Jones's alleged equal protection violations lack merit.

{¶ 44} Jones presents an additional claim that a juvenile subject to a discretionary transfer should have a mechanism similar to reverse bindover through which he or she may return to the juvenile system. "A legislative decision to treat two groups differently is unconstitutional only if it is based solely on reasons totally unrelated to the pursuit of the state's goals and if no grounds can be conceived to justify the different treatment." *State v. Batista*, 2016-Ohio-2848, 64 N.E.3d 498, ¶ 5 (1st Dist.), citing *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), and *State v. Williams*, 88 Ohio St.3d 513, 530-531, 728 N.E.2d 342 (2000). Juveniles subject to discretionary transfers have no need to return to the juvenile court's jurisdiction since they have already been found unamenable to the juvenile system. And as was stated above, the purpose behind the discretionary transfer statute is rationally related to the state's goal to deny the more lenient treatment in juvenile court to violent juvenile defendants. Thus, the different treatment between discretionary transfers and mandatory transfers subject to reverse bindover does not violate a juvenile's equal protection rights.

{¶ 45} Additionally, Jones's claim that his equal protection rights were violated because he could not speak candidly at the amenability hearing prior to the discretionary transfer is unpersuasive. At the amenability hearing, the juvenile court weighs the statutory factors in favor of and against transfer and many of those factors do not require individual input from the youth. R.C. 2152.12. Further, a

juvenile subject to bindover has another opportunity to speak openly about these issues since an adult court sentencing a juvenile may consider the juvenile's youth and attendant circumstances before imposing a sentence. *State v. Legg*, 2016-Ohio-801, 63 N.E.3d 424, ¶ 56 (4th Dist.).

{¶ 46} While Jones contends discretionary bindovers are racially and socially imbalanced and that statistically, Cuyahoga County binds over more cases than Franklin, Hamilton, Montgomery, and Summit Counties combined, Jones fails to provide current support for these arguments that specifically relates to discretionary transfers. These arguments also do not negate the General Assembly's "decision to single out older juvenile homicide offenders, who are potentially more street-wise, hardened, dangerous, and violent" and the finding that the government's identified goal is rationally related to the legitimate governmental purpose to protect society and lower violent juvenile crime. *State v. Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010, ¶ 67.

{¶ 47} Lastly, the General Assembly is mandated by the Ohio Constitution to define the jurisdiction of the state's common pleas courts and the courts are bound to follow the structure created by the General Assembly. The General Assembly can rationally achieve the legitimate state interest to limit juvenile crime by reclassifying the crimes within the juvenile court system's jurisdiction. *Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 37. This court is required to follow the discretionary transfer statute established by the General Assembly.

{¶ 48} For the foregoing reasons, the discretionary transfer statute is rationally related to the legitimate government purpose — to protect society from violent offenders and increase punishments for serious juvenile offenders — and, therefore, it does not violate Jones's equal protection rights. Thus, Jones's allegation of an equal protection violation is without merit.

## IV. Estoppel

{¶ 49} On April 4, 2019, the juvenile court conducted an amenability hearing on Jones's pending juvenile cases — Cuyahoga J.C. Nos. DL 18-109469 and DL 18-111267. The juvenile court found Jones unamenable to the juvenile court system for the charges presented. Accordingly, the juvenile court granted the state's motion to transfer both cases to adult court pursuant to R.C. 2152.12(B).

{¶ 50} Immediately after concluding Jones's amenability hearing and finding Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267 subject to discretionary transfer, the juvenile court addressed another complaint filed that same day against Jones in Cuyahoga J.C. No. DL-19-104009.

{¶ 51} In Cuyahoga J.C. No. DL-19-104009, the state charged Jones with offenses that, if committed by an adult, would constitute one count of burglary, a felony of the second degree, and two counts of receiving stolen property, felonies of the fourth degree. The juvenile court arraigned Jones, who was represented by counsel, on Cuyahoga J.C. No. DL-19-104009 and proposed the scheduling of a pretrial hearing in several weeks. Because the juvenile court had just found Jones unamenable in Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267, Jones felt it

was in his best interest to enter an admission in Cuyahoga J.C. No. DL-19-104009 even though no discovery had been completed in the case. Jones admitted to all three counts, the court adjudicated Jones delinquent on all three counts, and the matter was set for disposition at a later date.[4]

{¶ 52} Jones contends that the juvenile court's decision to bindover Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267 and classify him as an adult in those cases while it retained jurisdiction over Cuyahoga J.C. No. DL-19-104009 — and, therefore, considered Jones a child in that matter — lacked simplicity, fairness, and uniformity as required by the Juvenile Rules. Jones argues the discretionary transfer statute presents a convoluted and complicated procedure. Jones also appears to argue that once the juvenile court arraigned Jones as a child in Cuyahoga J.C. No. DL-19-104009, it was estopped from transferring jurisdiction of Jones's cases to the adult court. The state argues that the juvenile court retained jurisdiction over Cuyahoga J.C. No. DL-19-104009 after discretionary transfer of Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267 to the adult court, and the juvenile court's decisions complied with the applicable statutes and Juv.R. 1.

{¶ 53} R.C. 2152.03 defines cases initiated in the juvenile court system:

When a child is arrested under any charge, complaint, affidavit, or indictment for a felony or a misdemeanor, proceedings regarding the child initially shall be in the juvenile court in accordance with this chapter * * *.

---

[4] The juvenile court later committed Jones on Cuyahoga J.C. No. DL-19-104009 to a minimum of 12 months at the ODYS. Jones served his commitment at ODYS while awaiting his adult trial on Case Nos. DL-18-109469 and DL-18-111267.

Absent a proper bindover procedure, the juvenile court's subject-matter jurisdiction over a child is exclusive. *State v. Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), paragraph one of the syllabus.

{¶ 54} A child is statutorily defined as an individual under 18 years of age, with certain exceptions. R.C. 2152.02(C)(1). One such exception applies to discretionary and mandatory transfer cases. A juvenile subject to a discretionary or mandatory transfer to adult court pursuant to R.C. 2152.12 is not a child "in the transferred case" once transfer occurs. R.C. 2152.02(C)(4). Discretionary or mandatory transfer to adult court "abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint." R.C. 2152.12(I). Discretionary or mandatory transfer further extinguishes a juvenile's classification as a child in any case in which a complaint is filed against the individual once the juvenile is convicted of or pleads guilty to a felony in the transferred case. R.C. 2152.02(C)(5).

{¶ 55} Here, Jones was under 18 years old when he committed the alleged acts in Cuyahoga J.C. Nos. DL-18-109469, DL-18-111267, and DL-19-104009. Thus, the juvenile court had exclusive jurisdiction over Jones's cases. Once the juvenile court granted discretionary bindover in Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267, Jones was no longer considered a child in those cases and the juvenile court lost jurisdiction over them. Yet, the bindover or transfer process did not impact Jones's status as a child for any other cases pending before the juvenile court, including Cuyahoga J.C. No. DL-19-104009. At the time Jones entered an

admission in Cuyahoga J.C. No. DL-19-104009, he had not pled or been convicted in the transferred cases and, therefore, Jones met the statutory definition of a child and the juvenile court retained jurisdiction over DL-19-104009.[5]

{¶ 56} The juvenile court acted within the bounds of Juv.R. 1 when it retained jurisdiction of Cuyahoga J.C. No. DL-19-104009. Juv.R. 1 (B) reads, in pertinent part:

> These rules shall be liberally interpreted and construed so as to effectuate the following purposes:
>
> * * *
>
> (B) Construction.
>
> (2) to secure simplicity and uniformity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay;
>
> * * *
>
> (C) Exceptions.
>
> * * *

When any statute provides for procedure by general or specific reference to the statutes governing procedure in juvenile court actions, procedure shall be in accordance with these rules.

{¶ 57} A review of the record shows that the juvenile court retained jurisdiction over Cuyahoga J.C. No. DL-19-104009 following the discretionary transfer of Cuyahoga J.C. Nos. DL-18-109469 and DL-18-111267 to adult court and

---

[5] The absence of a probable cause and amenability hearing in Cuyahoga J.C. No. DL-19-104009 further supports the position that the juvenile court retained jurisdiction of the case. *See State v. Smith,* Slip Opinion No. 2022-Ohio-274, ¶ 41; R.C. 2152.12(B)(2) and (3). (Probable cause and amenability hearings, and the required statutory findings, must occur before a juvenile court loses jurisdiction through a discretionary bindover.)

this complied with the applicable statutes. The discretionary transfer statutes present the transfer procedure in understandable terms. R.C. 2512.10 and 2512.12. The juvenile court's compliance with those statutes demonstrated the juvenile court acted with simplicity, uniformity, and fairness in accordance with Juv.R. 1.

{¶ 58} The juvenile court had jurisdiction over Cuyahoga J.C. No. DL-19-104009 at the time the court accepted Jones's admission on April 4, 2019. Therefore, the juvenile court correctly accepted Jones's admission in Cuyahoga J.C. No. DL-19-104009, and Jones's estoppel argument lacks merit.

{¶ 59} We find no merit in Jones's due process, equal protection, and estoppel arguments and, therefore, overrule his assignment of error.

{¶ 60} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure

---

MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
ANITA LASTER MAYS, P. J., CONCURS IN JUDGMENT ONLY